UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITEDHEALTHCARE INSURANCE COMPANY, INC. AND UNITEDHEALTHCARE SERVICES, INC. | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Case No. 5:18-CV-347-DAE |
| MICHAEL MURPHY, M.D., JESSE SAUCEDO, JR., SAMANTHA MURPHY, LYNN MURPHY, JULIE PRICER, MISSION TOXICOLOGY, LLC, SUN CLINICAL LABORATORY, LLC, SUN ANCILLARY MANAGEMENT, LLC, INTEGRITY ANCILLARY MANAGEMENT, LLC, ALTERNATE HEALTH LAB, INC., AND LMK MANAGEMENT, LLC, | § § § § § § § § § § § | |
| Defendants. | § | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, ALTERNATIVELY, FOR CONSOLIDATION OR STAY

Defendants, Michael Murphy, M.D., Jesse Saucedo, Jr., Samantha Murphy, Lynn Murphy, Julie Pricer, Mission Toxicology, LLC, Sun Clinical Laboratory, LLC, Sun Ancillary Management, LLC, Integrity Ancillary Management, LLC, Alternate Health Lab, Inc., and LMK Management, LLC (collectively, "Defendants"), hereby respectfully submit their Motion to Dismiss Plaintiffs' Complaint, or, Alternatively, For Consolidation or Stay ("Motion").

## FACTUAL BACKGROUND

Plaintiffs UnitedHealthcare Insurance Company and UnitedHealthcare Services, Inc. (collectively referred to herein as "United") filed this Complaint on April 4, 2018 (the "Complaint") nearly six months after United was sued by Defendants Sun Clinical Laboratory

LLC and Mission Toxicology LLC in the United States District Court for the Western District of Texas, which is also before the Honorable David Alan Ezra: *Mission Toxicology, LLC and Sun Clinical Laboratory, LLC v. UnitedHealthcare Insurance Company, et al.*, Case No. 5:17-cv-01016 (the "Primary Case").[1] The Primary Case involves the same facts, the same claims, and the same parties (although the named defendants and plaintiffs vary slightly). The Complaint should be dismissed outright, consolidated, or stayed for this reason alone.

The Complaint is also preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") pursuant to 29 U.S.C. § 1144(a) and should be dismissed for failure to state a claim pursuant to F.R.C.P. 12(b)(6). Defendants therefore respectfully request that this Court dismiss the Complaint in its entirety, showing the Court as follows:

United is a health insurance company that either directly insures or administers ERISA employee health and welfare benefit plans. United provides administrative services for both Self-Funded Plans and Fully-Insured Plans. Complaint at ¶ 73, n. 9. Self-Funded Plans are funded by their respective sponsor, usually an employer, and for these plans United maintains administrative service agreements. *Id.* Fully-Insured Plans are funded by United, and for these plans United issues insurance policies and provides administrative services. "United provides health insurance and/or administration of health plan benefits to insureds or plan participants (i.e. members), pursuant to a variety of health care benefit plans and policies of insurance." *Id.* at ¶ 26. United's plans allow members the flexibility to choose to obtain healthcare services from either in-network providers or out-of-network providers. *Id.* at ¶ 27-28. Mission Toxicology, LLC, Sun Clinical Laboratory, LLC, Sun Ancillary Management, LLC, Alternate Health Lab, Inc., and LMK Management, LLC (collectively, the "Labs") are all out-of-

---

[1] The Second Amended Complaint in the Primary Case, filed May 4, 2018, is attached hereto as Exhibit A (hereinafter referred to as the "Primary Complaint").

network providers.

The Labs are entities that perform diagnostic toxicology urinalysis testing, blood testing, DNA testing, and allergy testing (hereinafter collectively referred to as "Laboratory Services") as ordered by licensed medical providers. The Labs do not directly interface with any of United's plan members prior to performing Laboratory Services. Instead, physicians and healthcare providers determine if, when, and to what extent urinalysis or any other testing is medically necessary. Once they have determined a patient needs medically necessary Laboratory Services, the primary providers send samples to the Labs for testing.

In the course of business, the Labs sometimes work with hospitals to assist the hospitals in providing services that the hospitals could otherwise not provide on their own. *Id.* at ¶ 52. Two such hospitals that the Labs worked with were Newman Memorial Hospital ("NMH") and Community Memorial Hospital ("CMH"). *Id.* at ¶ 17. Through contracts with these hospitals, the Labs performed Laboratory Services for many United members and were reimbursed for many of the claims submitted for the services performed. *Id.* at ¶ 5.

In late 2016 and 2017, United began denying claims for Laboratory Services performed by the Labs. The denial of claims ultimately led to multiple lawsuits, including the Primary Case. *Id.* at ¶ 6. For the reasons outlined below, this suit should be dismissed outright or, at minimum, consolidated as a counterclaim to the Primary Case.

## STANDARD OF REVIEW

### a.  Standard of Review with Respect to Duplicative Litigation.

The general principle of federal district courts is to avoid duplicative litigation. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Piecemeal litigation can burden the litigants, the courts, and is contrary to the interest of courts in maintaining judicial

economy. *Air King Prod. Co. v. Hazeltine Research*, 10 F.R.D. 381, 383 (E.D.N.Y. 1950). In considering duplicative litigation in federal courts, the Fifth Circuit recognizes the "first to file" rule. This rule provides that, to avoid duplicative litigation, "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action…" *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728–29 (5th Cir. 1985). It is in the Court's broad discretion whether to dismiss, stay, or consolidate the later-filed suit. *Id.*; *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1159 (5th Cir. 1992); *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. CIV A H-09-0352, 2009 WL 1544255, at *3 (S.D. Tex. June 2, 2009); *SuperMedia Inc. v. Bell*, No. 3:12-CV-2034-GFISH, 2012 WL 5389683, at *1 (N.D. Tex. Nov. 2, 2012).

**b.  Standard of Review with Respect to Failing to State a Claim.**

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded facts alleged in the Complaint as true and must construe the allegations in a light that is most favorable to United. *Central Laborers' Pension Fundv. Integrated Elec. Services Inc.*, 497 F.3d 546, 550 (5th Cir.2007). The motion to dismiss should be granted only if the Complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir.2010). Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1940, 173 L.Ed.2d 868 (2009).

## ARGUMENT

I.     **United's Complaint Should be Dismissed, or, Alternatively, Consolidated or Stayed.**

   a.  **The Court Should Dismiss United's Complaint.**

In the interest of judicial economy, minimizing expense, and fairness to the parties, United's Complaint should be dismissed because it is duplicative of the allegations in the Primary Case. "As between federal district courts . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist.*, 424 U.S. at 817 (citations omitted). This principle prevents the additional financial burden and time-wasting inherent in duplicative litigation. *Air King Prod. Co.*, *supra*, 10 F.R.D. at 383; *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The "first to file" rule followed by the Fifth Circuit states that a district court may dismiss an action where the issues can be resolved in the adjudication of a previously filed case pending in another district court. *W. Gulf Mar. Ass'n*, *supra*, 751 F.2d at 728–29; *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir.1999) ("Under the first-to-file rule, when related cases are pending between two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."). While typically the first to file rule arises in cases in different districts, "[t]he same concern with avoiding duplicative litigation is present where similar suits have been filed in two courts within the same district." *Save Power Ltd.*., 121 F.3d at 950. In deciding whether or not to dismiss on the basis of duplicative litigation, the court has broad discretion to dismiss the later-filed claims. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1160–61 (5th Cir. 1992); *W. Gulf Mar. Ass'n*, 751 F.2d at 728–29.

Here, the Court should exercise its discretion and dismiss United's Complaint in its entirety pursuant to the first to file rule because it is the later-filed suit adjudicating the same issues set forth in the Primary Case. It is indisputable that the Primary Case preceded this case;

Defendants Sun Clinical Laboratory, LLC ("Sun") and Mission Toxicology, LLC ("Mission") filed the Primary Complaint against United on October 10, 2017. *See* Primary Case, Dkt. No. 1. It is also indisputable that the Primary Case and the matter at hand are litigating the same facts; the pleadings in both cases discuss the claims reimbursement dispute between the Labs and United during the same time period with respect to the arrangements the Labs had with certain hospitals, such as NMH and CMH. *Cf.* Complaint, *with* Primary Complaint. While the parties in the two matters are not yet the same, United can request the joinder of additional parties, and in fact, such joinder may be required pursuant to F.R.C.P. 19(a).[2] Like the first to file rule, a central reason for the existence of required joinder and compulsory counterclaims is to avoid piecemeal litigation and promote judicial economy. *See S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962); *Davila Mendez v. Vatican Shrimp Co.*, 43 F.R.D. 294, 296 (S.D. Tex. 1966). Allowing this matter to continue, where the Primary Case was filed first, goes against this circuit's established principles in avoiding unnecessary litigation and expense.

### b. Alternatively, the Court Should Consolidate the Cases or Stay the Matter at Hand.

The matter at hand is duplicative and therefore should not be allowed to continue, as argued above. The Court may choose to consolidate the proceedings or stay the later-filed proceeding. "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." F.R.C.P. 42(a). Consolidation

---

[2] "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: **(i)** as a practical matter impair or impede the person's ability to protect the interest; or **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

is intended to aid in judicial economy and minimize the burden of multiple litigation on all parties involved. *See Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-497 (1933). It is specifically applicable where there is duplicative litigation in the same district. *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761-62 (5th Cir. 1989) (citing *St. Bernard General Hospital, Inc. v. Hospital Service Association of New Orleans, Inc.,* 712 F.2d 978, 990 (5th Cir. 1983), *cert. denied,* 466 U.S. 970, 104 (1984)). Here, the actions involve common questions of both law and fact and consolidation would avoid unnecessary costs to the parties and the Court. Thus, as an alternative to dismissal,[3] the Court should consider consolidation.

Finally, if the Court does not wish to dismiss this action or consolidate the two actions, it should stay the present litigation pending the adjudication of the claims in the Primary Case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936). Such power is properly exercised where there is unnecessary duplicative litigation such as the case at hand. *ACF Industries, Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967) (citation omitted) ("A stay pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery."). In deciding whether to grant a stay, the Court should consider the damage that could result from the stay, the hardship or inequity on a party if the case is allowed to continue, and the interests of justice in terms of simplifying or complicating the issues and questions of

---

[3] Defendants contend that dismissal is preferable to consolidation in the case at hand because while consolidation helps limit burdens, costs, and promotes judicial economy, the lawsuits continue to exist as separate matters even after consolidation. *Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018).

law that could result from a stay. *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 483 (N.D. Tex. 2016). Allowing this matter to proceed would be an unnecessary hardship on all parties involved because it would require twice the time, money, and resources expended where the dispute could be resolved in a single proceeding. Defendants request a stay of this proceeding pending adjudication of the Primary Case.

### II.    United's Causes of Action are Subject to Dismissal Because of ERISA Preemption.

ERISA's conflict preemption provisions of 29 U.S.C. § 1144(a) preempt and supersede any and all state laws, whether derived from legislative enactment or state common law, insofar as any law relates to an ERISA-governed plan. *Hall v. Newmarket Corp, et al.,* 747 F.Supp.2d 711, 715 (S.D.M.S. 2010) (citing *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 757–58 (5th Cir. 1990)). "The Supreme Court has established that a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to the plan." *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. Tex. 1994) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). The Fifth Circuit finds conflict preemption exists upon satisfaction of a two part test: "(1) The state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995). Preemption will apply even if the state law claims are not specifically designed to affect the ERISA plans or the plans are affected only indirectly. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1994) (citing *Alessi v. Raybestos-Manhattan,*

*Inc.*, 451 U.S. 504, 525 (1980)).[4] Here, because the causes of action are for the recovery of benefits pursuant to ERISA plans,[5] an area of exclusive federal concern, and United and Defendants are traditional ERISA entities, United's claims for Fraud and Fraudulent Nondisclosure, Negligent Misrepresentation, theft under the Texas Theft Liability Act, and Money Had and Received are preempted and should be dismissed in their entirety. Defendants' analysis proceeds by first addressing part two of the test, that the parties are traditional ERISA entities, and then discussing how each cause of action touches on areas of federal concern governed by ERISA.

### a. United and Defendants are traditional ERISA Entities for which Conflict Preemption Applies.

United and Defendants satisfy part two of the Fifth Circuit's two part test for conflict preemption because United is an ERISA fiduciary and Defendants, as assignees of United members, are beneficiaries. A person is a fiduciary with respect to a plan to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title. 29 U.S.C. § 1002(21)(A).

A "person" can refer to entities under ERISA. 29 U.S.C. § 1002(9). It is clear based on the definition set forth in 29 U.S.C. § 1002(21)(A) that United is an ERISA fiduciary and therefore a traditional ERISA entity.

---

[4] *Kersh v. UnitedHealthcare Ins. Co.*, 946 F.Supp.2d 621, 631 (W.D. Tex 2013) (citing *Cefalu v. B.F. Goodrich* Co., 871 F.2d 1290, 1292 n. 5 (5th Cir.1989)) ("A state-law cause of action that relates to an ERISA plan is preempted 'even if the action arises under general state law that in and of itself has no impact on employee benefit plans.").

United is clearly an ERISA fiduciary because it exercises discretion in managing benefits relating to services provided to its members. United admits in its Complaint that the plans "vest with United the authority, responsibility, and discretion to pursue overpayments, fraud, waste, and abuse, on the plans' behalf." Complaint at ¶ 73, n. 9. This discretionary authority and discretionary control in utilizing the plans matches the definition of an ERISA fiduciary set forth 29 U.S.C. § 1002(21)(A), and therefore United is a traditional ERISA entity. *See Mayeaux*, 376 F.3d at 432; *Hobson v. Robinson*, 75 F. App'x 949, 953 (5th Cir. 2003) (equating traditional ERISA entities with "the employer, the plan, and its fiduciaries, and the participants and beneficiaries").

Moreover, because Defendants are beneficiaries, the causes of action affect the relationship between traditional ERISA entities, and therefore conflict preemption applies. It is well established that beneficiaries are traditional ERISA entities. *Id.* As assignees of the benefits of United's members, Defendants stand in the shoes of the beneficiaries and are themselves considered beneficiaries. *See Metroplex Infusion Care, Inc. v. Lone Star Container Corp.*, 855 F. Supp. 897, 900 (N.D. Tex. 1994) (citation omitted) (stating "an assignee of benefits under ERISA is a statutory beneficiary of the plan").

**b. United's Causes of Action for Fraud, Fraudulent Nondisclosure, Negligent Misrepresentation, Theft Under the Texas Theft Liability Act, and Money Had and Received Address the Right to Receive Benefits.**

Conflict preemption applies in the case at hand because United's causes of action address the right to receive benefits pursuant to the terms of the plans, satisfying prong one of the two part conflict preemption test. Both the Supreme Court and the Fifth Circuit have acknowledged that ERISA's preemption language is deliberately expansive so that the ERISA

preemption provisions have a broad sweep.[6] *Heimann v. National Elevator Industry Pension Fund*, 187 F.3d 493, 512 (5th Cir.1999). In determining if conflict preemption applies, courts consider "whether the state law claims are 'bound up with interpretation and administration of the ERISA plan.'" *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 561 (W.D. La. 2012). Here, the causes of action are inextricable from the administration of the plans and therefore both parts of the two-part test for conflict preemption are satisfied and the causes of action should be dismissed.

### 1. Fraud and Fraudulent Nondisclosure and Negligent Misrepresentation are subject to ERISA Preemption.

United's claims for Fraud and Fraudulent Nondisclosure and Negligent Misrepresentation are governed by ERISA's conflict preemption provisions because they are all based on the terms of United members' ERISA plans. Because "ERISA's preemption language 'is deliberately expansive, and has been construed broadly by federal courts,'" if a fraud claim is based on a state law claim that "has a connection with or reference to" the terms of an ERISA plan, it will be preempted. *Smith v. Texas Children's Hosp*., 84 F.3d 152, 155 (5th Cir. 1996) (citation omitted). Where a fraud or negligent misrepresentation claim is based on payments owed or made under a plan, the claim is preempted. *See Transitional Hosps. Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 954 (5th Cir. 1999) (preempting state law claims by a hospital seeking recovery of benefits owed under a plan to a plan participant).

Here, United seeks reimbursement of benefits properly paid under the terms of its members' plans. The link between the allegations in the Complaint and the ERISA plans of United's members necessitates a finding of conflict preemption. Fraud and Fraudulent

---

[6] "Pre-emption of state law actions by federal law is to be decided based on the intent of Congress, which clearly intended the ERISA pre-emption clause to have an expansive reach." *Cefalu v. B.F. Goodrich Co.,* 871 F.2d at 1293 *(quoting Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985)) (citations omitted).

Nondisclosure and Negligent Misrepresentation share a common element: each of them is based on alleged misrepresentations regarding the submission of claims for benefits to United. Complaint at ¶¶ 127, 184. The misrepresentations also revolve around the receipt of reimbursements from both in-network and out-of-network plans. Complaint at ¶ 65. Whether a particular in or out-of-network service is covered deals with the terms of the ERISA plans. *See generally North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 193-94 (5th Cir. 2015). United is alleging that the plans were incorrectly administered and reimbursed because of Defendants' misrepresentations and fraudulent nondisclosures. Complaint at ¶¶ 127, 184. This connection with ERISA plans and the role of United as an ERISA fiduciary necessitates a finding of ERISA preemption. *See Transitional, supra*, 164 F.3d at 954; *Smith v. Texas Children's Hosp*., 84 F.3d 152, 154-155 (5th Cir. Tex. May 15, 1996); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 (1983). The claims for fraud and fraudulent nondisclosure and negligent misrepresentation must therefore be dismissed.

## 2. United's Claims under the Texas Theft Liability Act are subject to Conflict Preemption.

United's claim for violation of the Texas Theft Liability Act is preempted because it is based on the alleged appropriation of benefits provided pursuant to ERISA plans. Texas Penal Code § 31.03 provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." The Southern District of Texas Court addressed whether claims under this statute were subject to ERISA preemption in *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, 2011 U.S. Dist. LEXIS 155623, *68-69 (S.D. Tex. Aug. 22, 2011). In *St. Michael's*, the plaintiffs argued that the defendants unlawfully obtained services by failing to pay for treatments provided pursuant to the terms of ERISA plans. *Id*. Because the claims were based on a failure to pay as required

under the plans, they were governed by ERISA and therefore preempted. *Id.* United cannot escape preemption since its claims are based on the ERISA plans. *See* Weiner *v. Tex. Health Choice, L.C.*, 2002 U.S. Dist. LEXIS 2654, *11 (N.D. Tex. Feb. 15, 2002) (no preemption where claims are not based on the ERISA plans).

United's Texas Theft Liability Act claim is preempted because it is based on: "words in the claims submitted to United, false impressions of facts that IAM, Sun, Mission, Dr. Murphy, and Saucedo did not believe to be true;" and "the false impression of fact that [Sun and Mission] were part of United's provider network . . . ." Complaint at ¶¶ 161-62. Each purported instance of conduct amounting to appropriation relates to billing for claims, providing services per the ERISA plans, and the coverage of services as in-network or out-of-network, pursuant to the terms of the plans. This Circuit maintains that preemption applies even if the conduct alleged in the Complaint was in some instances only indirectly centered on the ERISA plans. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1994) (citations omitted).

### 3. Money Had and Received is Subject to Conflict Preemption

United's claim for Money Had and Received is subject to conflict preemption because it too is based on funds provided under the terms of ERISA plans. A claim "relates to" a health benefit plan when the claim is premised on the existence of an employee benefit plan. *Hall v. Newmarket Corp, et al., supra,* 747 F.Supp.2d at 715 (citing *Christopher v. Mobil Oil Corp.*, (950 F.2d 1209, 1220 (5th Cir. 1992)). "Money had and received is an equitable doctrine applied to prevent unjust enrichment." *Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). Courts in the Fifth Circuit have analyzed ERISA preemption in the context of unjust enrichment and similar causes of action on several occasions. *First Nat'l*

*Ltd. v. Reliance Std. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 108971, *14-15 (N.D. Tex. Oct. 12, 2010); *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt.*, LLC, 2011 U.S. Dist. LEXIS 155623, *46-47 (S.D. Tex. Aug. 22, 2011). A common aspect of the analysis for these claims is whether the claims themselves are based on funds provided under the ERISA plans. "Implicit in each of these claims is that [Defendant] is entitled to recover the proceeds as beneficiary under the Policy. Otherwise there would be no potential for unjust enrichment. **Absent the policy, then, neither of these claims exists**." *First Nat'l Ltd. v. Reliance Std. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 108971, at 14-15 (emphasis added).

The same conclusion must be reached here. First, absent the ERISA plans, United would not have made any payments. Second, United's claims require an analysis of the ERISA plans. This direct relationship between the claims and ERISA necessitates a finding of conflict preemption under 28 U.S.C. § 1144(a).

### III.  Fraud and Fraudulent Nondisclosure and Negligent Misrepresentation are Insufficiently Pled.

United's Complaint fails to meet the heightened standard of pleading for fraud and therefore must be dismissed. Federal Rule of Civil Procedure 9(b) "requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud . . . . The Fifth Circuit interprets Rule 9(b) strictly, requiring specific allegations as to each element of fraud." *BC's Heating & Air and Sheet Metal Works v. Vermeer Mfg. Co.*, 2012 WL 1067100 at *2 (S.D. Miss. 2012) (internal citations and quotation marks omitted); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010). This requires that the party alleging fraud "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal citations and quotation

marks omitted). "Under Texas law, fraud occurs when: (1) a party makes a material representation; (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the misrepresentation is made with the intention that it should be acted on by the other party; and (4) the other party relies on the misrepresentation and thereby suffers injury." *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993). United's fraud claim must be dismissed because it lacks the necessary specifics to survive dismissal. *See id*.

In the Fifth Circuit, the heightened pleading standard applies to negligent misrepresentation where the plaintiffs do not "urge a separate focus" on the negligent misrepresentation claims – for instance, where both claims "are based on the same set of alleged facts." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). "Under Texas law, a negligent misrepresentation occurs when: (1) a party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation supplies false information for the guidance of others in their business; and (3) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information." *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998).

United has not alleged any specific facts to satisfy the particularity requirement of Rule 9(b) for its Negligent Misrepresentation claim. *See generally, Spragins v Sunburst Bank*, 605 So.2d 777, 780. The who, what, when, where, why, and how is missing from United's Fraud and Negligent Misrepresentation claims. *See Sullivan v. Leor Energy*, 600 F.3d 542, 551 (5th Cir. 2010). Because United fails to meet this standard, their claims must be dismissed as a

matter of law.

### IV.   The Complaint Contains Insufficient Detail to Successfully Allege United's Claim for Fraudulent Transfers.

United's claims for fraudulent transfers must be dismissed as a matter of law because they are insufficiently pled and lack any factual particularity with respect to intent. A cause of action for fraudulent transfer must assert that there was actual or constructive fraudulent intent. *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App. 2007). Section 24.005(b) of the Texas Business & Commerce Code Annotated sets out a list of facts and circumstances that can evidence fraudulent intent.[7] There is nothing illegal or even unexpected about entities transferring money pursuant to a business relationship. United's empty allegation that the transfer of funds was made "with the actual intent to hinder, delay, and defraud United" is nothing more than a hollow recitation of the law with the names of Defendants filled in to the blanks. Complaint at ¶ 171. United offers no evidence that any transfers were made to defraud United (or any other party). This cause of action therefore does not contain enough factual matter to sufficiently plead a claim to survive a motion to dismiss. *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

### V.   United Insufficiently Pleads its Tortious Interference with Contract Claim.

United's claims for tortious interference with contract must be dismissed as a matter of

---

[7] "In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(b).

16

law because they are insufficiently pled. Under Texas state law, there are four elements to successfully prove a tortious interference with existing contracts: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). With respect to the second element requiring "a willful and intentional act of interference with the contract," the alleging party must present evidence of specific contract provisions that were breached. *Id.* at 675. "General claims of interference with a business relationship are insufficient to establish a tortious interference with contract claim." *Id*. The claim must make it clear that the interference was intentional. *Homoki v. Conversion Servs.*, 717 F.3d 388, 396 (5th Cir. Tex. May 28, 2013). "Moreover, 'a plaintiff must show that the defendant took an active part in persuading a party to breach its contract . . . .[;] [m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach.'" *Seeberger v. Bank of Am.*, N.A., 2015 U.S. Dist. LEXIS 168348, *62 (W.D. Tex. Dec. 16, 2015).

United fails to allege with specificity that the Defendants intended to induce the hospitals to breach their contracts with United. This failure to provide detail is critical to United's claims. United's Complaint fails to allege that any of Defendants knew the terms of any contract or intentionally interfered with such terms, as is required. *See Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d 598, 675 (S.D. Tex. 2010). Indeed, United admits that Sun, Mission, SAM, and IAM are strangers to the contracts between United and the hospitals, and does not allege how these Defendants would have knowledge of any specific contract terms. Complaint at ¶¶ 149-152. At no point in its Complaint does United reference any specific

agreements, the terms of specific agreements, or how Defendants would have knowledge of any terms of these agreements. Instead, United's defective Complaint contains exactly the kind of generalized tortious interference claims that are insufficient under Texas case law. *Rimkus Consulting Group, Inc. v. Cammarata*, *supra*, 688 F. Supp. at 674-75. Even accepting United's allegations as true, the claim for tortious interference fails to allege sufficient detail and must be dismissed pursuant to F.R.C.P. 12(b)(6).

## VI.    United's Claim for Theft under the Texas Theft Liability Act Fails.

To establish a Texas Theft Liability Act claim, United must show that: (1) Defendants unlawfully acquired or otherwise exercised control over property belonging to United; (2) Defendants intended to withhold the property from United permanently or for an extended period of time; and (3) United was thereby damaged. *Harmon v. Harmon*, 962 F. Supp. 2d 873, 883 (S.D. Tex. 2013). United's Complaint lacks specificity regarding the alleged "deception" and therefore, it must be dismissed. *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC*, 2016 U.S. Dist. LEXIS 71127, *46-47 (S.D. Tex. June 1, 2016).

## VII.    Money Had and Received is Insufficiently Pled.

To establish a claim for Money Had and Received, United must show that Defendants hold money that in equity and good conscience belongs to United. *Graman v. Graman*, No. 05-14-01254-CV, 2016 WL 235055, at *5 (Tex. App. Jan. 20, 2016). Defendants provided Laboratory Services to patients at the request of medical providers and billed only for those services. United has not alleged any facts to support its assertion that the money for those services belongs to United. Moreover, United's claim for Money Had and Received states that it paid money to NMH and CMH for services rendered, but that "Defendants took the money . . .." Complaint ¶ 180. Defendants were merely paid for the services they rendered, and United has

not provided any facts supporting the notion that fairness would have the money returned to United. Accordingly, the claim fails and must be dismissed as to all Defendants pursuant to F.R.C.P. 12(b)(6).

**VIII.    United's Allegations Against the Individual Defendants Should be Dismissed because United Cannot Pierce the Corporate Veil.**

The causes of action against Dr. Murphy, Jesse Saucedo, Jr., Lynn Murphy, Samantha Murphy, and Julie Pricer (collectively, the "Individual Defendants") should be dismissed because of United's failure to pierce the corporate veil. "Piercing the corporate veil is possible when the corporate form has been used as an alter ego of another person or corporation or if it has been used to perpetrate a fraud, evade an existing obligation, create a monopoly, circumvent a statute, protect a crime, or justify wrong." *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 23 (Tex. App. 2012) (citation omitted) (citing *SSP Partners v. Gladstrong Invs. (USA) Corp.,* 275 S.W.3d 444, 451 (Tex. 2008)). Piercing the corporate veil requirements apply equally to limited liability companies as they do corporations. *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013). Piercing the corporate veil should not be allowed unless the separateness between the entity and the individual ceases to exist or adhering to the idea that the entity and the individual are separate would sanction a fraud or promote injustice. *Zisblatt v. Zisblatt*, 693 S.W.2d 944, 950 (Tex. App. 1985), *dismissed* (Feb. 19, 1986) (citation omitted); *see Wilson v. Davis*, 305 S.W.3d 57, 69 (Tex. App. 2009) ("[T]he corporate fiction generally will not be disregarded absent exceptional circumstances.").

Here, no exceptional circumstances exist to disregard the corporate form of the entities, and therefore the causes of action should be dismissed as to the Individual Defendants. United's Complaint fails to show that the individuals were so intertwined with the entities as to warrant piercing the corporate veil. Nowhere does the Complaint allege that the role of the Individual

Defendants is such that the entities they work for cease to exist. United fails to allege any specific facts as to how the entities and Individual Defendants are one in the same. Complaint at ¶ 120.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask that this Court dismiss United's Complaint in its entirety or, alternatively, order this case be consolidated with the Primary Case or stayed.

Respectfully submitted,

**HORNBERGER FULLER & GARZA INCORPORATED**
7373 Broadway, Suite 300
San Antonio, Texas 78209

By: /s/ David W. Navarro_____
    David W. Navarro
    State Bar No. 24027683
    dnavarro@hfgtx.com
    David Jed Williams
    State Bar No. 21518060
    jwilliams@hfgtx.com
    Cassie Garza Matheson
    State Bar No. 24074258
    cmatheson@hfgtx.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2018 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not allowed to receive electronically Notices of Electronic Filing.

/s/ **David W. Navarro**
David W. Navarro

Andrew G. Jubinsky
Raymond E. Walker
FIGARI & DAVENPORT, LLP
901 Main Street,
Suite 3400
Dallas, Texas 75202
Telephone (214) 939-2000
Facsimile (214) 939-2090

Stephen W. Mooney
WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC
3344 Peachtree Road, NE
Suite 2400
Atlanta, Georgia 30326
Telephone (404) 876-2700
Facsimile (404) 875-9433

ATTORNEYS FOR PLAINTIFFS