UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MISSION TOXICOLOGY, LLC, | § | |
| SUN CLINICAL LABORATORY, LLC. | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Case No. 5:17-CV-01016-DAE |
| | § | |
| UNITEDHEALTHCARE INSURANCE | § | |
| COMPANY, UNITEDHEALTHCARE OF | § | |
| TEXAS, INC., UNITEDHEALTHCARE OF | § | |
| FLORIDA, INC., AND | § | |
| UNITEDHEALTHCARE SERVICES, INC., | § | |
| | § | |
| Defendants, | § | |

| | | |
|---|---|---|
| UNITEDHEALTHCARE INSURANCE | § | |
| COMPANY, INC. AND | § | |
| UNITEDHEALTHCARE SERVICES, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Case No. 5:18-CV-347-DAE |
| | § | |
| MICHAEL MURPHY, M.D., JESSE | § | |
| SAUCEDO, JR., SAMANTHA MURPHY, | § | |
| LYNN MURPHY, JULIE PRICER, | § | |
| MISSION TOXICOLOGY, LLC, SUN | § | |
| CLINICAL LABORATORY, LLC, SUN | § | |
| ANCILLARY MANAGEMENT, LLC, | § | |
| INTEGRITY ANCILLARY MANAGEMENT, | § | |
| LLC, ALTERNATE HEALTH LAB, INC., | § | |
| AND LMK MANAGEMENT, LLC, | § | |
| | § | |
| Defendants. | § | |

## **LAB DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants, Mission Toxicology, LLC ("Mission"), Sun Clinical Laboratory, LLC ("Sun"), Sun Ancillary Management, LLC ("SAM"), Integrity Ancillary Management, LLC ("IAM"), Alternate Health Lab, Inc., and LMK Management, LLC (collectively, "Defendants" or the "Labs"), hereby respectfully submit their Motion to Dismiss Plaintiffs' Complaint ("Motion"), in response to the April 4, 2018 Original Complaint (the "Complaint") filed by Plaintiffs UnitedHealthcare Insurance Company and UnitedHealthcare Services, Inc. (collectively referred to herein as "Plaintiffs" or "United").

## FACTUAL BACKGROUND

United is a health insurance company that either directly insures or administers Employee Retirement Income Security Act of 1974 (ERISA) employee health and welfare benefit plans. United provides administrative services for both Self-Funded Plans and Fully-Insured Plans. Complaint at ¶ 73, n. 9. Self-Funded Plans are funded by their respective sponsor, usually an employer, and for these plans United maintains administrative service agreements. *Id.* Fully-Insured Plans are funded by United, and for these plans United issues insurance policies and provides administrative services. "United provides health insurance and/or administration of health plan benefits to insureds or plan participants (i.e. members), pursuant to a variety of health care benefit plans and policies of insurance." *Id.* at ¶ 26. United's plans allow members the flexibility to choose to obtain healthcare services from either in-network providers or out-of-network providers. *Id.* at ¶ 27-28. The Labs are all out-of-network providers.

The Labs are entities that perform diagnostic toxicology urinalysis testing, blood testing, DNA testing, and allergy testing (hereinafter collectively referred to as "Laboratory Services") as ordered by licensed medical providers. The Labs do not directly interface with any of

United's plan members prior to performing Laboratory Services. Instead, it is the physicians and/or healthcare providers that provide medical care and assistance to United's plan members and those first-line providers who determine if, when, and to what extent urinalysis or any other testing is medically necessary. Once they have determined a patient needs medically necessary Laboratory Services, the primary providers send samples to the Labs for testing.

In the course of business, the Labs sometimes work with hospitals to assist the hospitals in providing services that the hospitals could otherwise not provide on their own. *Id.* at ¶ 52. Two such hospitals that Defendants worked with were Newman Memorial Hospital ("NMH") and Community Memorial Hospital ("CMH"). *Id.* at ¶ 17. Through contracts with these hospitals, the Labs performed Laboratory Services for many United members and were reimbursed for many of the claims submitted for the services performed. *Id.* at ¶ 5. In late 2016 and 2017, United began denying claims for Laboratory Services performed by the Labs. United's failure to pay the claims led to the Labs filing suit against United in an effort to be reimbursed for services provided to United members. As its purported rationale for denying the claims, United concocted a narrative alleging that Defendants defrauded United by hiding their role in providing Laboratory Services to United members. *Id.* at ¶ 1.

The Court should not be swayed by the allegations set forth in the Complaint and instead recognize United's claims for what they are: a ploy by Plaintiffs to recoup amounts justifiably paid to Defendants. The Labs were legitimate subcontractors of NMH and CMH, and provided benefits to United plan members pursuant to the terms of those plans. Defendants never attempted or intended to deceive United or to hide their involvement in providing services to United members. Indeed, reference lab arrangements are explicitly authorized in Section 1833(h)(5)(A) of the Social Security Act and Chapter 16, Section 40.1 of the Medicare Claims

Processing Manual. United should not be allowed to pursue reimbursement of funds justifiably paid for services provided to its members.  Thus, for these reasons, and the reasons that follow, Defendants ask that the Court grant the instant Motion in its entirety.

## STANDARD OF REVIEW

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept all well-pleaded facts alleged in the Complaint as true and must construe the allegations in a light that is most favorable to United. *Central Laborers' Pension Fundv. Integrated Elec. Services Inc.*, 497 F.3d 546, 550 (5th Cir.2007). The motion to dismiss should be granted only if the Complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive a rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir.2010). Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1940, 173 L.Ed.2d 868 (2009).

## ARGUMENT

### I.     Defendants' Request an Oral Hearing on the Instant Motion.

As an initial matter, Defendants respectfully request an oral hearing regarding the instant Motion pursuant to Local Rule CV-7(h). Pursuant to Local Rule CV-7(h), "[t]he allowance of an

oral hearing is within the sole discretion of the court." The Court has great deference on whether or not an oral hearing is appropriate, and its ultimate ruling would only be reviewed under an abuse of discretion standard. *See Sanders v. Agnew*, 306 F. App'x 844, 848 (5th Cir. 2009).

Defendants contend that there is good cause for the Court to grant an oral hearing in the instant matter to address 1) the implications of ERISA tracing/preemption; 2) the deficiencies of the Complaint with respect to the allegations against Defendants; and 3) other issues raised by the parties, both Plaintiffs and Defendants, in their respective motions to dismiss. Moreover, granting Defendants' request for oral hearing serves the interest of judicial economy because it would expedite the dismissal of any claims the Court finds are without merit and do not warrant further time and expense to assert or defend. Thus, for these reasons, Defendants ask that the Court exercise its discretion and grant the request for oral hearing.

## II.     United's Causes of Action are Subject to Dismissal Because of ERISA Preemption.

ERISA's conflict preemption provisions of 29 U.S.C. § 1144(a) preempt and supersede any and all state laws, whether derived from legislative enactment or state common law, insofar as any law relates to an ERISA-governed plan. *Hall v. Newmarket Corp, et al.,* 747 F.Supp.2d 711, 715 (S.D.M.S. 2010) (citing *Lee v. E.I. DuPont de Nemours & Co*., 894 F.2d 755, 757–58 (5th Cir.1990)). "The Supreme Court has established that a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to the plan." *Hook v. Morrison Milling Co*., 38 F.3d 776, 781 (5th Cir. Tex. 1994) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). The Fifth Circuit often analyzes conflict preemption using a two part test: "(1) The state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and

the participants and beneficiaries." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995). Preemption will apply even if the state law claims are not specifically designed to affect the ERISA plans or the plans are affected only indirectly. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1994) (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 525 (1980)).[1] Here, because the causes of action are for the recovery of benefits pursuant to ERISA plans,[2] an area of exclusive federal concern, and United and Defendants are traditional ERISA entities, United's claims for fraud and fraudulent nondisclosure, negligent misrepresentation, theft under the Texas Theft Liability Act, and money had and received are preempted and should be dismissed in their entirety. Defendants' analysis proceeds by first addressing part two of the test, that the parties are traditional ERISA entities, and then discussing how each cause of action touches on areas of federal concern governed by ERISA.

### a. United and Defendants are traditional ERISA Entities for which Conflict Preemption Applies.

United and Defendants satisfy part two of the Fifth Circuit's two part test for conflict preemption because United is an ERISA fiduciary and Defendants, as assignees of United members, are beneficiaries. A person is a fiduciary with respect to a plan to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he

---

[1] Kersh v. UnitedHealthcare Ins. Co., 946 F.Supp.2d 621, 631 (W.D. Tex 2013) (citing *Cefalu v. B.F. Goodrich* Co., 871 F.2d 1290, 1292 n. 5 (5th Cir.1989)) ("A state-law cause of action that relates to an ERISA plan is preempted 'even if the action arises under general state law that in and of itself has no impact on employee benefit plans.").

[2] While United's Complaint does not explicitly state the majority of member plans at issue are governed by ERISA, upon and information provided in the Complaint, the Exhibits attached thereto, and belief, Defendants contend that this is the case.

has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title. 29 U.S.C. § 1002(21)(A).

A "person" can refer to entities under ERISA. 29 U.S.C. § 1002(9). Here, United artfully pleads its Complaint to minimize the discretion it has in administering healthcare services and to avoid labeling itself a fiduciary or mentioning ERISA. *See generally*, Complaint. Despite these tactics it is clear based on the definition set forth in 29 U.S.C. § 1002(21)(A) that United is an ERISA fiduciary and therefore a traditional ERISA entity.

United is clearly an ERISA fiduciary because United exercises discretion in managing benefits paid for the Laboratory Services provided to its members. Furthermore, as United admits in its Complaint, the plans "vest with United the authority, responsibility, and discretion to pursue overpayments, fraud, waste, and abuse, on the plans' behalf." Complaint at ¶ 73, n. 9. This discretionary authority and discretionary control in utilizing the plans matches the definition of an ERISA fiduciary set forth 29 U.S.C. § 1002(21)(A) and therefore United is a traditional ERISA entity. *See Mayeaux*, 376 F.3d at 432; *Hobson v. Robinson*, 75 F. App'x 949, 953 (5th Cir. 2003) (equating traditional ERISA entities with "the employer, the plan, and its fiduciaries, and the participants and beneficiaries").

Moreover, because Defendants are beneficiaries, the causes of action affect the relationship between traditional ERISA entities, and therefore conflict preemption applies. It is well established that beneficiaries are traditional ERISA entities. *Id.* As assignees of the benefits of United's members, Defendants stand in the shoes of the beneficiaries and are themselves considered beneficiaries. *See Metroplex Infusion Care, Inc. v. Lone Star Container Corp.*, 855 F. Supp. 897, 900 (N.D. Tex. 1994) (citation omitted) (stating "an assignee of benefits under ERISA is a statutory beneficiary of the plan"). Thus, the claims set

forth in the Complaint affect the relationship between traditional ERISA entities and the second part of the Fifth Circuit's two-party conflict preemption test is satisfied. *See Hobson*, 75 F. App'x at 953.

**b. United's Causes of Action for Fraud, Fraudulent Nondisclosure, Negligent Misrepresentation, Theft Under the Texas Theft Liability Act, and Money Had and Received Address the Right to Receive Benefits.**

Conflict preemption applies in the case at hand because United's causes of action address the right to receive benefits pursuant to the terms of the plans, satisfying prong one of the two part conflict preemption test. Both the Supreme Court and the Fifth Circuit have acknowledged that ERISA's preemption language is deliberately expansive so that the ERISA preemption provisions have a broad sweep.[3] *Heimann v. National Elevator Industry Pension Fund*, 187 F.3d 493, 512 (5th Cir.1999). In determining if conflict preemption applies, courts consider "whether the state law claims are 'bound up with interpretation and administration of the ERISA plan.'" *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 561 (W.D. La. 2012). Here, the causes of action are inextricable from the administration of the plans and therefore both parts of the two-part test for conflict preemption are satisfied and the causes of action should be dismissed.

**1. Fraud and Fraudulent Nondisclosure and Negligent Misrepresentation are subject to ERISA Preemption.**

United's claims for Fraud and Fraudulent Nondisclosure and Negligent Misrepresentation are governed by ERISA's conflict preemption provisions because they are all based on the terms of United members' ERISA plans. Because "ERISA's preemption language 'is deliberately expansive, and has been construed broadly by federal courts,'" if a fraud claim is

---

[3] "Pre-emption of state law actions by federal law is to be decided based on the intent of Congress, which clearly intended the ERISA pre-emption clause to have an expansive reach." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d at 1293 *(quoting Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985)) (citations omitted).

based on a state law claim that "has a connection with or reference to" the terms of an ERISA plan, it will be preempted. *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) (citation omitted). Where a fraud or negligent misrepresentation claim is based on payments owed or made under a plan, the claim is preempted. *See Transitional Hosps. Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 954 (5th Cir. 1999) (preempting state law claims by a hospital seeking recovery of benefits owed under a plan to a plan participant). Moreover, the distinction regarding whether services are in-network or out-of-network, and whether such in/out-of-network services are covered for United members is governed by the particular plans. *See generally*, *North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 193-94 (5th Cir. 2015).

In the case at hand, United combats whether the Laboratory Services for which it paid were actually covered under the terms of its members' plans and seeks reimbursement of benefits properly paid under the terms of its members' plans. Such entwinement of the allegations in the Complaint with the ERISA plans of United members necessitates a finding of conflict preemption. Each of fraud and fraudulent nondisclosure and negligent misrepresentation shares a common element: each of them is based on alleged misrepresentations regarding the submission of claims for benefits to United. Complaint at ¶¶ 127, 184. Moreover, the misrepresentations center on, among other allegations, the receipt of reimbursements from plans that do not cover out-of-network services and the receipt of reimbursements at the higher co-insurance percentage for in-network services. Complaint at ¶ 65. Whether or not a particular in or out-of-network service is covered deals with the terms of the ERISA plans. *See generally North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 193-94 (5th Cir. 2015). United is alleging that the plans were

incorrectly administered and reimbursed because of Defendants' misrepresentations and fraudulent nondisclosures. Complaint at ¶¶ 127, 184. This connection with ERISA plans and the role of United as an ERISA fiduciary necessitates a finding of ERISA preemption. *See Transitional, supra*, 164 F.3d at 954; *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 154-155 (5th Cir. Tex. May 15, 1996); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 (1983). The claims for fraud and fraudulent nondisclosure and negligent misrepresentation therefore must be dismissed.

### 2. United's Claims under the Texas Theft Liability Act Are Subject to Conflict Preemption.

United's claim for violation of the Texas Theft Liability Act is preempted because it is based on the alleged unlawful appropriation of benefits provided pursuant to ERISA plans. Texas Penal Code § 31.03 provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." The Southern District of Texas Court addressed whether claims under this statute were subject to ERISA preemption in *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, 2011 U.S. Dist. LEXIS 155623, *68-69 (S.D. Tex. Aug. 22, 2011). In *St. Michael's*, the plaintiffs argued that the defendants unlawfully obtained services by failing to pay for treatments provided pursuant to the terms of ERISA plans. *Id.* Because the claims were based on a failure to pay as required under the plans, they were governed by ERISA and therefore preempted. *Id.* United cannot escape preemption since its claims are based on the ERISA plans. *See* Weiner *v. Tex. Health Choice, L.C.*, 2002 U.S. Dist. LEXIS 2654, *11 (N.D. Tex. Feb. 15, 2002) (no preemption where claims are not based on the ERISA plans).

United's claims under the Texas Theft Liability Act are subject to ERISA preemption because they are based on benefits provided pursuant to the ERISA plans of United members.

United's Texas Theft Liability Act claim is based on: "words in the claims submitted to United, false impressions of facts that IAM, Sun, Mission, Dr. Murphy, and Saucedo did not believe to be true;" and "the false impression of fact that [Sun and Mission] were part of United's provider network . . . ." Complaint at ¶¶ 161-62. Each purported instance of conduct amounting to appropriation relates to billing for claims, providing services per the ERISA plans, and the coverage of services as in-network or out-of-network, pursuant to the terms of the plans. This Circuit maintains that preemption applies even if the conduct alleged in the Complaint was in some instances only indirectly centered on the ERISA plans. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. Tex. Nov. 14, 1994) (citations omitted). Here, the unlawfully appropriated property is money paid to Defendants that was only "unlawfully appropriated" by United exercising its discretion as an ERISA fiduciary and administering benefits pursuant to the plans. Complaint at ¶ 161 (discussing United's judgment as to whether benefits should be paid). This nexus is sufficient for ERSIA conflict preemption to apply under Fifth Circuit law, and therefore the alleged violations of the Texas Theft Liability Act must be dismissed.

### 3.  Money Had and Received Is Subject to Conflict Preemption

United's claim for money had and received is subject to conflict preemption because it too is based on funds provided under the terms of ERISA plans. A claim "relates to" a health benefit plan when the claim is premised on the existence of an employee benefit plan. *Hall v. Newmarket Corp, et al., supra,* 747 F.Supp.2d at 715 (citing *Christopher v. Mobil Oil Corp.*, (950 F.2d 1209, 1220 (5th Cir. 1992)). "Money had and received is an equitable doctrine applied to prevent unjust enrichment." *Bank of Saipan v. CNG Financial Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). Courts in the Fifth Circuit have analyzed ERISA preemption in the

context of unjust enrichment and similar causes of action on several occasions. *First Nat'l Ltd. v. Reliance Std. Life Ins. Co*., 2010 U.S. Dist. LEXIS 108971, *14-15 (N.D. Tex. Oct. 12, 2010); *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt*., LLC, 2011 U.S. Dist. LEXIS 155623, *46-47 (S.D. Tex. Aug. 22, 2011). A common aspect of the analysis for these claims is whether the claims themselves are based on funds provided under the ERISA plans. "Implicit in each of these claims is that [Defendant] is entitled to recover the proceeds as beneficiary under the Policy. Otherwise there would be no potential for unjust enrichment. **Absent the policy, then, neither of these claims exists**." *First Nat'l Ltd. v. Reliance Std. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 108971, at 14-15 (emphasis added).

The same conclusion must be reached here. First, absent the ERISA plans, United would not have made any payments. Second, United's claims require an analysis of the ERISA plans themselves, including what services were covered under the plans and what were the rightful reimbursements to Defendants under the plans for the Laboratory Services performed. This direct relationship between the claims and ERISA plans subject money had and received to conflict preemption under 28 U.S.C. § 1144(a).

### III.   Fraud and Fraudulent Nondisclosure and Negligent Misrepresentation Are Insufficiently Pled.

United's Complaint fails to meet the heightened standard of pleading fraud and therefore must be dismissed. Federal Rule of Civil Procedure 9(b) "requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud . . . . The Fifth Circuit interprets Rule 9(b) strictly, requiring specific allegations as to each element of fraud." *BC's Heating & Air and Sheet Metal Works v. Vermeer Mfg. Co.*, 2012 WL 1067100 at *2 (S.D. Miss. 2012) (internal citations and quotation marks omitted); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010). This requires that the party alleging fraud

"specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal citations and quotation marks omitted). "Under Texas law, fraud occurs when: (1) a party makes a material representation; (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the misrepresentation is made with the intention that it should be acted on by the other party; and (4) the other party relies on the misrepresentation and thereby suffers injury." *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir.1993); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC*, 2016 U.S. Dist. LEXIS 71127, *46-47 (S.D. Tex. June 1, 2016).

United's pleadings are deficient with regards to the level of specificity when taking into account the Fifth Circuit's heightened pleading standard. United references allegedly fraudulent conduct, but does not provide any indication as to when or where the conduct occurred. The general, nonspecific nature of the allegations of supposed fraud provides no particularity tying any specific statements made by any particular individuals on any given occasion. Where the claim is lacking in such specificity, it must be dismissed.

In the Fifth Circuit, the heightened pleading standard applies to negligent misrepresentation as well as fraud claims in cases where the plaintiffs do not "urge a separate focus" on the negligent misrepresentation claims – for instance, where both claims "are based on the same set of alleged facts." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also Lone Star Fund V (U.S.) LP v. Barclays Bank, PLC*, 594 F.3d

383, 387 n.3 (5th Cir. 2010); *Center v. Total Body Contouring Incorporated*, 2017 WL 1093203 at *6 (N.D. Miss. 2017). "Under Texas law, a negligent misrepresentation occurs when: (1) a party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation supplies false information for the guidance of others in their business; and (3) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information." *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)); Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC, 2016 U.S. Dist. LEXIS 71127, *49 (S.D. Tex. June 1, 2016).

Here, United's claim of negligent misrepresentation is based on the same set of alleged facts as its fraud claim and therefore fails for the same reasons that its fraud claim fails – it has not alleged any sufficiently specific facts to satisfy the particularity requirement of Rule 9(b). *See generally, Spragins v Sunburst Bank*, 605 So.2d 777, 780. As with United's fraud claim, notably missing in its negligent misrepresentation claim is the level of detail required by 9(b): the who, what, when, where, why, and how. *See Sullivan*, 600 F.3d at 551. Because United fails to meet this standard, its claim for negligent misrepresentation must be dismissed as a matter of law.

### IV.   The Complaint Contains Insufficient Detail to Successfully Allege United's Claim for Fraudulent Transfers.

United's claims for fraudulent transfers must be dismissed as a matter of law because they are insufficiently pled and lack any factual particularity with respect to intent. A cause of action for fraudulent transfer must assert that there was actual or constructive fraudulent intent. *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App. 2007). Section 24.005(b) of the Texas Business & Commerce Code Annotated sets out a list of facts and circumstances that can

evidence fraudulent intent.[4] Here, United has only offered details showing that transfers of assets were made between NMH, CMH, and Defendants, but there is nothing illegal or even unexpected about entities doing business with one another transferring money. While United states that the transfer of funds was made, "with the actual intent to hinder, delay, and defraud United," this is nothing more than a hollow recitation of the law with the names of Defendants filled in to the blanks. Complaint at ¶ 171. Defendants transferred funds because the funds were reimbursements for Laboratory Services that Defendants themselves performed; United offers no evidence that such transfers were done to defraud United (or any other party). This cause of action therefore does not contain enough factual matter to sufficiently plead a claim to survive a motion to dismiss. *See Cuvillier*, 503 F.3d at 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). United concludes by stating that Defendants knew or should have known that NMH and CMH would soon incur debts beyond their ability to pay, but cites no fact and provides no detail as to how Defendants should or could have known of NMH and CMH's financial solvency. Complaint at ¶ 172. United's claim for fraudulent transfers is so wholly lacking in specificity or any factual detail and therefore even accepting United's allegations as true, the claim fails and must be dismissed as to all Defendants pursuant to F.R.C.P. 12(b)(6).

### V.  United Insufficiently Pleads its Tortious Interference with Contract Claim.

---

[4] "In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(b).

United's claims for tortious interference with contract must be dismissed as a matter of law because it is insufficiently pled. Under Texas state law there are four elements to successfully prove a tortious interference with existing contracts: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc*., 29 S.W.3d 74, 77 (Tex. 2000); *see also Amigo Broad., LP v. Spanish Broad. Sys., Inc*., 521 F.3d 472, 489 (5th  Cir.  2008). The party alleging tortious interference has the burden of proving each element of the claim. *Dunn v. Calahan*, No. 03-05-00426-CV, 2008 Tex. App. LEXIS 9498, 2008 WL 5264886, at *3 (Tex. App.--Austin  Dec.  17,  2008,  pet.  denied) (mem.  op.)." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-675 (S.D. Tex. Feb. 19, 2010). With respect to the second element requiring "a willful and intentional act of interference with the contract," the alleging party must present evidence of specific contract provisions that were breached. *Id.* at 675. "General claims of interference with a business relationship are insufficient to establish a tortious interference with contract claim." *Id*. The claim must make it clear that the interference was intentional. *Homoki v. Conversion Servs*., 717 F.3d 388, 396 (5th Cir. Tex. May 28, 2013). "Moreover, 'a plaintiff must show that the defendant took an active part in persuading a party to breach its contract . . . .[;] [m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach.'" *Seeberger v. Bank of Am*., N.A., 2015 U.S. Dist. LEXIS 168348, *62 (W.D. Tex. Dec. 16, 2015) (quoting *Settlement Funding LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590, 607-08 (S.D. Tex. 2014)).

Despite the length of the Complaint and many Exhibits, United fails to allege with

specificity that the Defendants knowingly targeted contract provisions. This failure to provide detail is critical to United's claims. United's Complaint alleges that Sun, Mission, SAM, and IAM, used CMH and NMH's billing credentials to disguise out-of-network lab services as though they were performed by CMH and NMH so that Sun, Mission, SAM, and IAM would be reimbursed pursuant to the contracts between United and the hospitals. Complaint at ¶ 149. This allegation does not in any way equate to a showing that any of Defendants knew the terms of the contract or intentionally interfered with such terms, as is required. *See Rimkus Consulting Group, Inc.*, 688 F. Supp. 2d 598 at 675. Indeed, United admits that Sun, Mission, SAM, and IAM are strangers to the contracts between United and the hospitals, and does not allege how these Defendants would have knowledge of specific contract terms. Complaint at ¶¶ 149-152. United also alleges that IAM intentionally did not collect copays and deductibles from patients in violation of United's contract, but fails to allege IAM had knowledge of the terms of collection of payments set forth in United's contracts. Complaint at ¶ 149. At no point in its Complaint does United reference any specific agreements, the terms of specific agreements, or how Defendants would have knowledge of terms of these agreements. Instead, United's defective Complaint contains exactly the kind of generalized tortious interference claims that are insufficient under Texas case law. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674- 675 (S.D. Tex. Feb. 19, 2010). Even accepting United's allegations as true, the claim for tortious interference fails to allege sufficient detail and must be dismissed pursuant to F.R.C.P. 12(b)(6).

### VI.     United's Claim for Theft under the Texas Theft Liability Act Fails.

To establish a Texas Theft Liability Act claim, United must show that: (1) Defendants unlawfully acquired or otherwise exercised control over property belonging to United; (2)

Defendants intended to withhold the property from United permanently or for an extended period of time; and (3) United was thereby damaged. *Harmon v. Harmon*, 962 F. Supp. 2d 873, 883 (S.D. Tex. 2013); *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Texas*, No. CIV.A. H-11-2086, 2012 WL 3028107, at *4 (S.D. Tex. July 24, 2012); *Meadows v. Hartford Life Ins. Co.*, 429 F. Supp. 2d 853, 866 (S.D. Tex. 2006). United's Complaint only provides the vaguest of details regarding the "deception" used by Defendants to obtain money from United. United is surreptitiously revamping its previously alleged fraud claim as a violation of the Texas Theft Liability Act. Accordingly, United's claim for damages under the Texas Theft Liability Act must be dismissed for the same reason the fraud claims should be dismissed, that is, because they fail to allege sufficient details about when and where any fraudulent conduct occurred. The general, nonspecific nature of the allegations of supposed "deception" provides no particularity tying any specific statements made by any particular individuals on any given occasion. Where the claim is lacking in such specificity, it must be dismissed. *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC*, 2016 U.S. Dist. LEXIS 71127, *46-47 (S.D. Tex. June 1, 2016).

**VII.   Money Had and Received is Insufficiently Pled.**

To establish a claim for money had and received, United must show that Defendants hold money that in equity and good conscience that money belongs to United. *Graman v. Graman*, No. 05-14-01254-CV, 2016 WL 235055, at *5 (Tex. App. Jan. 20, 2016). A claim for money had and received is not premised on wrongdoing, but rather looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 (Tex. 2015). Defendants provided Laboratory Services to patients at the request of medical providers and billed only for those services. United has not alleged any facts to support its assertion that, in fairness, the

18

money for those services belongs to United. Moreover, United's claim for money had and received states that it paid money to NMH and CMH for services rendered, but that "Defendants took the money. . . ." Complaint ¶ 180. Defendants were merely paid for the services they rendered, and United has not provided any facts supporting the notion that fairness would have the money returned to United. Accordingly, the claim fails and must be dismissed as to all Defendants pursuant to F.R.C.P. 12(b)(6).

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully ask that this Court dismiss United's Complaint in its entirety.

Respectfully submitted,

**HORNBERGER FULLER & GARZA INCORPORATED**
7373 Broadway, Suite 300
San Antonio, Texas 78209

By: /s/ David W. Navarro
     David W. Navarro
     State Bar No. 24027683
     dnavarro@hfgtx.com
     David Jed Williams
     State Bar No. 21518060
     jwilliams@hfgtx.com
     Cassie Garza Matheson
     State Bar No. 24074258
     cmatheson@hfgtx.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not allowed to receive electronically Notices of Electronic Filing.

_____/s/ David W. Navarro_____
David W. Navarro

Andrew G. Jubinsky
Raymond E. Walker
FIGARI & DAVENPORT, LLP
901 Main Street,
Suite 3400
Dallas, Texas 75202
Telephone (214) 939-2000
Facsimile (214) 939-2090

Stephen W. Mooney
WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC
3344 Peachtree Road, NE
Suite 2400
Atlanta, Georgia 30326
Telephone (404) 876-2700
Facsimile (404) 875-9433

ATTORNEYS FOR PLAINTIFFS